**HOGAN LOVELLS US LLP**
Vassi Iliadis (SBN 296382)
James Ettinger (SBN 344292)
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
vassi.iliadis@hoganlovells.com
jay.ettinger@hoganlovells.com

Adam Cooke (*pro hac vice* forthcoming)
555 Thirteenth Street NW
Washington, D.C. 20004
Telephone:  (202) 637-5600
adam.a.cooke@hoganlovells.com

*Attorneys for Defendant*
*Optum, Inc.*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>OPTUM, INC.,<br><br>    Defendant. | Case No.  3:25-cv-0044-CAB-JLB<br><br>The Honorable Cathy A. Bencivengo<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT OPTUM, INC.'S MOTION TO COMPEL ARBITRATION AND STAY ACTION**<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT<br><br>*[Defendant's Notice of Motion to Compel Arbitration and Stay Litigation, Declaration of Heather Fisher, Declaration of Vassi Iliadis Declaration of Simone Pepper, and Declaration of Rebecca Thompson filed concurrently herewith]*<br><br>Complaint Served:  January 7, 2025<br>Trial Date:          None Set |

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................i

TABLE OF AUTHORITIES ...........................................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES............................................1

INTRODUCTION ...........................................................................................................1

BACKGROUND ..............................................................................................................2

    A.   Optum's Website.................................................................................2

    B.   Plaintiff Agreed to UnitedHealth Group's Terms................................2

    C.   The Terms Include an Arbitration and Class Action Waiver Provision .........................................................................................5

    D.   Plaintiff Breaches the Terms...............................................................7

ARGUMENT......................................................................................................................8

    I.   Federal Law Strongly Favors Enforceability of Arbitration Agreements .....................................................................................8

    II.   Plaintiff Entered into a Valid and Enforceable Arbitration Agreement .......................................................................................9

    III.   Any Dispute About Arbitrability is for the Arbitrator........................15

    IV.   Were This Court to Assess Arbitrability, Plaintiff's Claims Are Covered by the Arbitration Agreement and the Arbitration Agreement Is Not Unconscionable .....................................................17

        A.   The Arbitration Agreement Covers Plaintiff's Claims.............17

        B.   The Arbitration Agreement Is Not Unconscionable.................18

            1.   The arbitration agreement is not procedurally unconscionable. .............................................................18

            2.   The arbitration agreement is not substantively unconscionable. .............................................................20

    V.   The Litigation Should Be Stayed Pending Completion of Individual Arbitration Proceedings.......................................................21

CONCLUSION.................................................................................................................22

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acorin v. Experian Info. Sols., Inc.*,
2024 WL 5011950 (S.D. Cal. Dec. 6, 2024) ............................................. 9, 11, 13

*Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*,
855 F.2d 1470 (9th Cir. 1988) ................................................................... 1

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995) .................................................................................. 8

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) .................................................................................. 9

*Anderson v. Optum Servs., Inc.*,
2024 WL 4589910 (E.D. Cal. Oct. 28, 2024) ....................................... 6, 21

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) .................................................................................. 15

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .............................................................................. 9, 20

*Babaeva v. J. Crew Group, LLC*,
2023 WL 7346079 (N.D. Cal. Nov. 6, 2023) ........................................... 18

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .................................................................... 10

*Bielski v. Coinbase*,
87 F.4th 1003 (9th Cir. 2023) .................................................................. 19

*Brennan v. Opus Bank*,
796 F.3d 1125, 1130 (9th Cir. 2015) ........................................................ 16

*Buckley v. Gallo Sales Co.*,
949 F. Supp. 737 (N.D. Cal. 1996) ........................................................... 1

*Campbell v. CubeSmart*,
2025 WL 251429 (S.D. Cal. Jan. 21, 2025) ............................................. 21

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW

TABLE OF AUTHORITIES
CASE NO. 3:25-CV-0044-CAB-JLB

*Carlson v. BMW Fin. Servs. NA, LLC*,
2025 WL 80245 (D. Minn. Jan. 13, 2025) ......................................................17, 18

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ...........................................................................9, 17

*Circuit City Stores, Inc. v. Ahmed,*
283 F.3d 1198 (9th Cir. 2002).................................................................................19

*Coinbase, Inc. v. Bielski*,
599 U.S. 736 (2023) ................................................................................................21

*Coneff v. AT&T Corp.*,
673 F.3d 1155 (9th Cir. 2012)..................................................................................20

*Conrad v. Phone Directories Co.*,
585 F. 3d 1367 (10th Cir. 2009)..................................................................................1

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ...................................................................................................9

*Dohrmann v. Intuit, Inc.*,
823 F. App'x 482 (9th Cir. 2020)..............................................................................10

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018) ...............................................................................................8

*Esquer v. Ed. Mgmt. Corp.*,
292 F. Supp. 3d 1005 (S.D. Cal. 2017) ....................................................................20

*Ferrell v. CubeSmart*,
2025 WL 592795 (S.D. Cal. Feb. 24, 2025) ............................................................21

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) ....................................................................................9, 15, 17

*Flores-Mendez v. Zoosk*,
2022 WL 2967237 (N.D. Cal. Jul. 27, 2022) ..........................................................20

*Green Tree Fin. Corp.-Alabama v. Randolph*,
531 U.S. 79 (2000) .....................................................................................................9

*Hansen v. Ticketmaster Ent., Inc.*,
2020 WL 7319358 (N.D. Cal. Dec. 11, 2020) .........................................................11

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW

*HC Dalmoreproduct v. Kogan*,
   145 F.3d 1338 (9th Cir. 1998)......................................................................... 1

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) ................................................................................... 15

*Houtchens v. Google LLC*,
   649 F. Supp. 3d 933 (N.D. Cal. 2023)............................................................ 14

*Ill. Casualty Co. v. Kladek, Inc.*,
   2023 WL 4869249 (D. Minn. Jul. 31, 2023)................................................... 16

*Jacobsen Gravel Co. v. IronPlanet, Inc.*,
   2016 WL 10879837 (D. Minn. Nov. 10, 2016)................................................ 16

*Jones v. Experian Info. Sols., Inc.*,
   2025 WL 227198 (D. Minn. Jan. 7, 2025) ................................................ 11, 13

*Jordan v. Best Buy Co.*,
   2025 WL 580894 (D. Minn. Feb. 21, 2025) ......................................... 11, 13, 18

*Keebaugh v. Warner Bros. Ent. Inc.*,
   100 F.4th 1005 (9th Cir. 2024)................................................... 11, 12, 13, 14

*Kohler v. Whaleco, Inc.*,
   2024 WL 4887538 (S.D. Cal. Nov. 25, 2024)........................................ 13, 19, 20

*Lamkin v. Morinda Props. Weight Parcel, LLC*,
   440 F. App'x 604 (10th Cir. 2011)................................................................... 1

*Laymon v. J. Rockcliff, Inc.*,
   219 Cal.Rptr.3d 185 (Cal. Ct. App. 2017) ..................................................... 10

*Lee v. Ticketmaster L.L.C.*,
   817 F. App'x 393 (9th Cir. 2020).................................................................. 10

*Mainville v. Coll. Town Pizza, Inc.*,
   629 F. Supp. 3d 913 (D. Minn. 2022) ......................................................... 10, 20

*Momot v. Mastro*,
   652 F.3d 982 (9th Cir. 2011)...................................................................... 9, 16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ...................................................................................... 17

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW

- iv -

TABLE OF AUTHORITIES
CASE NO. 3:25-CV-0044-CAB-JLB

*N. Am. Composites Co v. Reich*,
 2016 WL 471353 (D. Minn. Feb. 5, 2016) ........................................................ 16

*Oberstein v. Live Nation Ent., Inc.*,
 60 F.4th (9th Cir. 2023) ..............................................................................*passim*

*U.S. ex rel. Oliver v. Parsons Co.*,
 195 F.3d 457 (9th Cir. 1999) ............................................................................ 10

*Open Book Theatre Co. v. Brown Paper Tickets, LLC*,
 749 F. Supp. 3d 1076 (S.D. Cal. 2024) ................................................. 11, 13, 14

*OTO, L.L.C. v. Kho*,
 8 Cal.5th 111 (2019) ........................................................................................ 18

*Patrick v. Running Warehouse, LLC*,
 93 F.4th 468 (9th Cir. 2024) .................................................................. 10, 12, 15

*Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752*,
 989 F.2d 1077 (9th Cir. 1993) .......................................................................... 17

*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US),
 LLC*, 55 Cal.4th 223 (2012) ........................................................................ 18, 20

*Rent-A-Center, W., Inc. v. Jackson*,
 561 U.S. 63 (2010) ........................................................................................... 15

*Rissi v. T-Mobile USA, Inc.*,
 2025 WL 108187 (S.D. Cal. Jan 15, 2025) .................................................. 19, 21

*S.S. by and through Stern v. Peloton Interactive, Inc.*,
 566 F. Supp. 3d 1019 (S.D. Cal. 2021) ............................................................... 8

*S.T.G. by and through Garcia v. Epic Games, Inc.*,
 2024 WL 4375782 (S.D. Cal. Oct. 2, 2024) ...................................................... 21

*Sellers v. Justanswer, LLC*,
 73 Cal.App.5th 444 (2021) ............................................................................... 14

*Siebert v. Amateur Athletic Union of U.S., Inc.*,
 422 F. Supp. 2d 1033 (D. Minn. 2006) .......................................................*passim*

*U.S. v. Sutcliffe*,
 505 F.3d 944 (9th Cir. 2007) .............................................................................. 8

*United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*,
   46 F. App'x 412 (9th Cir. 2002)..............................................................................21

*Wilson v. Hatch Bank*,
   2024 WL 1355492 (S.D. Cal. Mar. 29, 2024).......................................................14

**Statutes**

Cal. Civ. Code § 1550..............................................................................................10

Federal Arbitration Act, 9 U.S.C. §§ 1–16.......................................................*passim*

**Other Authorities**

Rules of the American Arbitration Association, Rule R-7(a) ...........................6, 16

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW

TABLE OF AUTHORITIES
CASE NO. 3:25-CV-0044-CAB-JLB

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff John Doe ("Plaintiff") alleges numerous statutory and common law claims on behalf of a putative nationwide class against Optum, Inc. ("Optum") arising out of Optum's purported use of Google Analytics and other technologies on its website, www.optum.com (the "Website").  But Plaintiff should never have filed suit in this Court, let alone on behalf of a proposed class, because he previously agreed to arbitrate any claims arising out of his use of Optum's Website on an individual basis.

Plaintiff was provided clear and conspicuous notice of the arbitration provision, including a class action waiver, and expressly acknowledged that he reviewed and agreed to these terms.  Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, and well-established law, the terms Plaintiff agreed to should be enforced.  Optum respectfully requests that the Court grant the Motion, compel arbitration of Plaintiff's claims on an individual basis, and stay this litigation pending the completion of individual arbitration proceedings.[1]

---

[1] This Motion satisfies Defendant's obligation to respond to the Complaint (ECF No. 1) at this stage.  *See HC Dalmoreproduct v. Kogan*, 145 F.3d 1338, 1338 (9th Cir. 1998) (noting that an arbitration motion is treated as delaying the need to file an answer); *Buckley v. Gallo Sales Co.*, 949 F. Supp. 737, 739-40 (N.D. Cal. 1996) (treating a motion to stay pending arbitration as a Rule 12(b)(1) motion that "must be decided before other motions"); *see also Lamkin v. Morinda Props. Weight Parcel*, *LLC*, 440 F. App'x 604, 608 (10th Cir. 2011) (holding that parties moving to compel arbitration need not file an answer or assert defenses because such a requirement would undercut the "right *not to litigate*" and "is a non-sequitur").  Optum reserves the right to file a subsequent Rule 12(b) motion on all applicable grounds.  *See Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1475 (9th Cir. 1988) (holding that a prior motion to dismiss or stay did not bar a later Rule 12(b) motion); *Conrad v. Phone Directories Co.*, 585 F. 3d 1376, 1383, n. 2 (10th Cir. 2009) ("If a party files a motion under FAA §§ 3 or 4, [and] that motion is denied by the court[,] . . . nothing prevents that party from then filing a Rule 12 motion to dismiss.").

## **BACKGROUND**

### A.   **Optum's Website**

Optum, a subsidiary of UnitedHealth Group Incorporated ("UnitedHealth Group") and an affiliate of UnitedHealthcare Insurance Company ("UnitedHealthcare"), provides "a wide range of healthcare services" and maintains a public-facing website, www.optum.com.  Compl. ¶¶ 1, 6, 22-23.  UnitedHealth Group affiliated entities often provide complimentary and integrated healthcare services.  Declaration of Heather Fisher ("Fisher Decl.") ¶ 2.  For example, when individuals obtain health benefits through UnitedHealthcare, Optum frequently administers behavioral health benefits for UnitedHealthcare members.  *Id*.  To facilitate the provision of care to members, Optum and UnitedHealthcare also leverage the same online account platform, HealthSafe ID ("HSID").  *Id*.  Members with an HSID account can access Optum patient services via the Website, UnitedHealthcare's patient portal called MyUHC, and patient services through other UnitedHealth Group entities.  *Id*.

### B.   **Plaintiff Agreed to UnitedHealth Group's Terms**

On October 2, 2023, Plaintiff enrolled in an Optum Behavioral Health and UnitedHealthcare medical insurance policy.  *Id*. ¶ 5, Ex. 1 (screenshot of Plaintiff's policy membership record).  Plaintiff created an HSID account on November 20, 2023, *id*. ¶ 6, Ex. 2, which enabled him to access online portals associated with the Website and MyUHC.  *Id*.  To create an HSID account, Plaintiff would have had to complete the following steps.  *Id*. ¶ 8(a).

**Step 1:** First, Plaintiff would have had to complete the registration webpage. This webpage asked the member to enter their name and date of birth, along with either their Health Plan ID (consisting of their member ID and their group or policy number) or their Social Security Number to identify and verify the member's health plan.  *Id*. ¶ 8(b), Ex. 3 at Figure 1.  The registration page appeared as follows:

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW

- 2 -



**Step 2:** Next, Plaintiff would have had to confirm his identity either via a one-time password sent to an email address or via a text or phone call. *Id.* ¶ 8(c), Ex. 3 at Figure 2. This confirmation process appeared as follows:



MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 3:25-CV-0044-CAB-JLB

**Step 3:** After Plaintiff confirmed his identity, he would have been directed to the account creation webpage, which prompted him to create a username and password and provide an email address to associate with his HSID account. *Id*. ¶ 8(d), Ex. 3 at Figure 3. Immediately below, Plaintiff would have been presented with two checkboxes, outlined in blue. The first, which was designated as optional, asked the member whether they wanted their username to be remembered on the device being used. *Id*. The second was an agreement acknowledgment that expressly stated, "By selecting this checkbox, I have reviewed and agree to the Terms of Use, Privacy Policy, and Consumer Communications Notice." The "Terms of Service" was underlined and in blue font, indicating that it was a clickable hyperlink. If clicked, that hyperlink would take the member to UnitedHealth Group's Terms of Use ("Terms"). Below the agreement acknowledgment checkbox, Plaintiff would have been presented with a blue "Continue" button that he could select to create his HSID account. *Id*. To select the "Continue" button to create his account, Plaintiff first had to check the agreement acknowledgment checkbox. *Id*. The account creation page appeared as follows:



HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW

MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 3:25-CV-0044-CAB-JLB

Plaintiff could not have created his HSID account or accessed either the MyUHC or Website patient portals without completing the process described above, including selecting the checkbox to confirm that he "reviewed and agree[d] to the Terms of Use." *Id*. ¶ 9.

### C.    The Terms Include an Arbitration and Class Action Waiver Provision

The Terms Plaintiff assented to on November 20, 2023 when creating his HSID account made clear that they governed his use of "UnitedHealth Group's … and Affiliates' (an entity controlling, controlled by, or under common control with a named party) online and mobile websites, platforms, services and applications ('Online Services')," including the Website and associated Optum and UnitedHealthcare patient portals.    Declaration of Simone Pepper ("Pepper Decl.") ¶ 3, Ex. A at 1.  The Terms also made clear that Plaintiff was agreeing to an arbitration and class action waiver provision.  *Id*., Ex. A at 6-8.  At the top, the Terms state in capital letters:

> THIS DOCUMENT CONTAINS AN ARBITRATION AGREEMENT AND CLASS ACTION WAIVER, WHICH AFFECT YOUR LEGAL RIGHTS. YOU SHOULD REVIEW THIS DOCUMENT IN ITS ENTIRETY BEFORE ACCESSING OR USING THE ONLINE SERVICES.

*Id*., Ex. A at 1 (capitalization and emphasis in original).

Farther down, the Terms included a "**Resolving Disputes**" provision ("Disputes Provision") that describes the dispute resolution procedures for claims relating to Online Services and the Terms.  *Id*., Ex. A at 6-8.  Under the Disputes Provision header, the Terms state the following in bold, capital letters: "**PLEASE READ THIS SECTION CAREFULLY – IT MAY SIGNIFICANTLY AFFECT YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT**." *Id*., Ex. A at 6.

The Disputes Provision first describes the "**Informal Resolution**" procedure: "Before filing a claim in connection with these Terms or the Online Services, you

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW

- 5 -

MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 3:25-CV-0044-CAB-JLB

agree to try to resolve the dispute informally.  Contact legalmail@uhg.com if the dispute is with UnitedHealth Group, UnitedHealthcare, *Optum*, or Rally Health." *Id*. (emphasis added).  If the dispute is not resolved within 30 days of contact, then "a formal arbitration proceeding" may be brought.  *Id*.

The Disputes Provision then details the formal arbitration process.  The "**Agreement to Arbitrate**" includes an agreement "to resolve *any claims* relating to these Terms, or the Online Services, through final and binding arbitration," except under a limited set of circumstances described in the "**Exceptions to Agreement to Arbitrate**" provision.  *Id*., Ex. A at 6-7 (emphasis added).  The Exceptions to Agreement to Arbitrate provision clarifies that besides (i) claims in small claims court, (ii) disputes about the existence or extent of an individual's health benefits or coverage, or (iii) claims that may not be arbitrated as a matter of law, "*all other claims relating to these Terms or the Online Services*" are subject to arbitration, including disputes concerning "the interpretation, formation, performance, or breach of the Terms," and "whether a claim is subject to arbitration."  *Id*. (emphasis added).

After arbitration is initiated, the "**Arbitration Procedures**" provision explains that the arbitration "will be conducted by a single arbitrator, governed by the Consumer Arbitration Rules of the American Arbitration Association ('AAA'), (www.adr.org/Rules), unless otherwise agreed to by the parties."  *Id*., Ex. A at 7. The Consumer Rules of the American Arbitration Association ("AAA Rules") empower the arbitrator to resolve any disputes regarding the scope of the parties' arbitration agreement.  Rule R-7(a) is unambiguous: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."[2]

---

[2] Consumer Arbitration Rules of the American Arbitration Association, Rule R-7(a), available at https://adr.org/sites/default/files/Commercial%20Rules.pdf (last visited March 23, 2025).

Below the Arbitration Procedures, the Disputes Provision includes a class action waiver with a prominent header: "**No Class Actions.  PLEASE READ THIS SECTION CAREFULLY – IT MAY SIGNIFICANTLY AFFECT YOUR LEGAL RIGHTS**."  The provision states in capital letters:

> BY AGREEING TO THIS ARBITRATION AGREEMENT, YOU ARE GIVING UP YOUR RIGHT TO GO TO COURT, INCLUDING YOUR RIGHT TO A JURY TRIAL AND TO PARTICIPATE IN A CLASS ACTION.  YOU UNDERSTAND THAT BY AGREEING TO THIS ARBITRATION AGREEMENT AND CLASS ACTION WAIVER, YOU MAY ONLY BRING CLAIMS AGAINST US AND OUR RELATED PARTIES IN AN INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS ACTION OR REPRESENTATIVE PROCEEDING.  IF YOU DO NOT AGREE TO ARBITRATION, YOU SHOULD OPT OUT OF THIS ARBITRATION PROVISION PER THE TERMS.  OTHERWISE, YOU ARE NOT AUTHORIZED TO USE THE ONLINE SERVICES IN ANY WAY.

*Id.*, Ex. A at 7.

The Disputes Provision also contains a section on how to opt out of the Agreement to Arbitrate.  *Id.*, Ex. A at 6.  There is no record of Plaintiff having exercised his right to opt out of the Agreement to Arbitrate.  Declaration of Rebecca Thompson ("Thompson Decl.") ¶ 3.

Finally, the Terms include a choice of law provision, which provides that the "**Governing Law**" for the "Terms and any claim or dispute" is Minnesota law.  Pepper Decl., Ex. A at 8.

### D.    Plaintiff Breaches the Terms

Rather than following the Disputes Provision's procedures, Plaintiff filed this putative class action on January 8, 2025, asserting claims on behalf of himself and all others similarly situated.  Compl. at 1.  In the Complaint, Plaintiff alleges that Optum implemented Google Analytics and certain other technologies on its Website, allowing the technologies to purportedly record unspecified "sensitive medical search terms" that Plaintiff entered into the Website's search bar.  *See id.*

¶¶ 122-26, 151-54, 58-64.  Based on these allegations, Plaintiff asserts an assortment of claims under federal and state law.  *Id*. ¶¶ 189-293.

Plaintiff never notified Optum of his intent to initiate this action, reached out to initiate the Informal Resolution procedure, or initiated individual arbitration proceedings.  Thompson Decl. ¶ 4.

## ARGUMENT

Plaintiff entered into a valid and enforceable arbitration agreement that required him to pursue his claims through individual arbitration rather than in court and that delegated to the arbitrator, not a court, any questions regarding the scope and enforceability of the arbitration agreement.  This Court should therefore order Plaintiff to arbitrate his claims on an individual basis pursuant to the FAA and stay this litigation pending completion of those proceedings.

## I.    FEDERAL LAW STRONGLY FAVORS ENFORCEABILITY OF ARBITRATION AGREEMENTS

The FAA reflects the well-established federal policy favoring arbitration and requires that arbitration agreements be rigorously enforced nationwide.  "[T]he law is clear: Congress has instructed that arbitration agreements like those before us must be enforced as written."  *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018).  The FAA's central provision states that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[3]  9 U.S.C. § 2.  Arbitration agreements are placed

---

[3] There is no question that the arbitration agreement here is subject to the FAA because the Terms cover various Online Services that affect commerce. *See* 9 U.S.C. § 2 (FAA extends to arbitration "provision[s] in any . . . contract evidencing a transaction involving commerce"); *Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 273-74 (1995) (holding that FAA applies broadly to reach transactions "affecting" commerce); *U.S. v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) ("[T]he Internet is an instrumentality and channel of interstate commerce."); *S.S. by and through Stern v. Peloton Interactive, Inc.*, 566 F. Supp. 3d 1019, 1042 (S.D. Cal. 2021) ("[B]ecause [Pelton's services] require use of the Internet, the [Arbitration] Agreement would involve interstate commerce.").

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW

MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 3:25-CV-0044-CAB-JLB

"on an equal footing with other contracts," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011), and are enforced "according to their terms," *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013).  Indeed, the FAA "mandates that district courts *shall* direct the parties to proceed to arbitration" if it concludes that the parties have agreed to arbitrate the dispute and "leaves no place for the exercise of discretion." (emphasis added).  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

If a valid arbitration agreement exists, the Court "shall make an order directing the parties to proceed to arbitration in accord with the terms of the agreement," 9 U.S.C. § 4, and "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement," *id.* § 3; *see also Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011); *Acorin v. Experian Info. Sols., Inc.*,  2024 WL 5011950, at *8 (S.D. Cal. Dec. 6, 2024).

## II.    PLAINTIFF ENTERED INTO A VALID AND ENFORCEABLE ARBITRATION AGREEMENT

Plaintiff entered into a valid and enforceable arbitration agreement when creating an HSID account.

The validity of an agreement to arbitrate is assessed under state law.  *See* 9 U.S.C. § 2; *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").  Under California law, the essential elements for a contract are (1) "[p]arties capable of contracting;" (2) "[t]heir consent;" (3) "[a] lawful object;" and (4) "[s]ufficient cause or consideration."[4]  *U.S. ex rel. Oliver v. Parsons Co.*, 195

---

[4] Application of Minnesota law leads to the same outcome.  Under Minnesota law, the essential elements for a contract are the communication of a specific and definite offer, acceptance of that offer, and consideration.  *See Mainville v. Coll. Town Pizza, Inc.*, 629 F. Supp. 3d 913, 921 (D. Minn. 2022) (citation omitted).  Because the contract formation elements do not materially differ between Minnesota and

F.3d 457, 462 (9th Cir. 1999) (citing Cal. Civ. Code § 1550). "California also "has a strong public policy in favor of arbitration and any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration." *Laymon v. J. Rockcliff, Inc.*, 219 Cal.Rptr.3d 185, 192 (Cal. Ct. App. 2017).

"The internet has 'not fundamentally changed'" the law of contract formation, *Dohrmann v. Intuit, Inc.,* 823 F. App'x 482, 483 (9th Cir. 2020) (citation omitted), and when evaluating online agreements, courts examine "whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394 (9th Cir. 2020); *see also Siebert v. Amateur Athletic Union of U.S., Inc.*, 422 F. Supp. 2d 1033, 1039 (D. Minn. 2006) ("[A] party's assent to [an online] contract is judged by the party's objective conduct, rather than their subjective intent."). Specifically, courts evaluate whether "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022).

In assessing whether the notice of an online agreement is "reasonably conspicuous" and whether the individual "unambiguously manifests" assent, courts consider the following factors:

1)    whether notice of the agreement is presented in a legible font size and color (*see Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024); *Jordan v. Best Buy Co.*, 2025 WL 580894, at *4 (D. Minn. Feb. 21, 2025));

2)    whether the agreement is presented via hyperlink and whether the hyperlink is offset in a contrasting color (*see Oberstein v. Live Nation*

California law, the Court need not resolve any choice-of-law questions at this juncture. *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023).

*Ent., Inc.*, 60 F.4th 505, 516 (9th Cir. 2023); *Jones v. Experian Info. Sols., Inc.*, 2025 WL 227198, at *2 (D. Minn. Jan. 7, 2025));

3) whether the hyperlinked agreement is in close proximity to the assent button (*see Hansen v. Ticketmaster Ent., Inc.*, 2020 WL 7319358, at *4 (N.D. Cal. Dec. 11, 2020); *Acorin*, 2024 WL 5011950, at *5; *Jones*, 2025 WL 227198, at *2);

4) whether the surrounding website features distract from the noticed agreement (*see Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1020 (9th Cir. 2024));

5) whether the customer is explicitly advised that the act of clicking will constitute assent to the agreement (*see Oberstein,* 60 F.4th at 515; *Acorin*, 2024 WL 5011950, at *6; *Jones*, 2025 WL 227198, at *2); and

6) whether the "type of transaction contemplates entering into a continuing, forward-looking relationship governed by terms and conditions." *Keebaugh*, 100 F.4th at 1014; *Open Book Theatre Co. v. Brown Paper Tickets, LLC*, 749 F. Supp. 3d 1076, 1082 (S.D. Cal. 2024)).

Here, each of these factors weigh strongly in favor of finding that Plaintiff agreed to the Terms and is therefore bound by the arbitration agreement. In creating an HSID account, Plaintiff checked a box affirming that he had reviewed and agreed to the accompanying hyperlinked Terms. Fisher Decl. ¶ 8-9. Only after checking that box could Plaintiff complete the account creation process by clicking the "Continue" button. *Id*. ¶ 8(d).

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW

- 11 -



***Visibility and Prominence***. The agreement acknowledgment informing users that "[b]y selecting this checkbox" they have "reviewed and agree to the Terms of Use" is displayed "in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Oberstein,* 60 F.4th at 515; *see also Patrick*, 93 F.4th at 477 (enforceable agreement where "notice is clear legible"). It is shown in "a contrasting font color" (black and blue) against a simple, uncluttered white background, *Keebaugh* 100 F.4th at 1020, and appears in a "regular sized font" that is comparable to the webpage's surrounding text. *See*

*Acorin*, 2024 WL 5011950, at *5; *see also Jordan*, 2025 WL 580894, at *4 (Terms appear "in plainly readable text"). The hyperlinked "Terms of Use" text is "conspicuously distinguished from the surrounding text in bright blue font, making its presence readily apparent." *Oberstein*, 60 F.4th at 516; *see also Jones*, 2025 WL 227198 at *2 (citing *Oberstein* for the same). Indeed, blue font is "the color typically used to signify the presence of a hyperlink." *Keebaugh*, 100 F.4th at 1018 (citation omitted). The "Terms of Use" text is also "capitalized, legible, and appear[s] in … underlined font," further putting users "on constructive notice that they would be bound by the hyperlinked polic[y]." *Kohler v. Whaleco, Inc.*, 2024 WL 4887538, at *5 (S.D. Cal. Nov. 25, 2024).

*Notice Proximity & Website Design*. The notice is not "buried on the bottom of the webpage or placed outside the action box," but is instead located directly next to the assent checkbox and 'directly on top of … [the] action button"—the "Continue" button. *Oberstein,* 60 F.4th at 517; *see also Open Book Theatre Co.*, 749 F. Supp. 3d at 1082-83 (conspicuous notice where hyperlink "was placed front and center, not buried in some misleading location … appear[ing] next to the required 'I agree' checkbox[.]"); *Jones*, 2025 WL 227198, at *2 (conspicuous notice where "disclosure was positioned . . . immediately above signup button"). Additionally, the surrounding webpage is simple and uncluttered. *Keebaugh*, 100 F.4th at 1021 (enforceable agreement where the sign-in screen "lacks clutter").

*Explicit notice of legal significance*. The agreement acknowledgment explicitly states that "[b]y selecting this checkbox, I have reviewed and agree to the Terms of Use, Privacy Policy, and Consumer Communications Notice." Fisher Decl., Ex. 3 at Figure 3. This language unambiguously informs individuals that their selection of the checkbox constitutes a manifestation of their assent to the Terms. *Acorin*, 2024 WL 5011950, at *6 (unambiguous assent where user was informed "By clicking 'Create Your Account': I accept and agree to your Terms of Use Agreement"); *Jones*, 2025 WL 227198, at *2 (similar).

***Continuing, forward-looking relationship***.  The creation of an HSID account enables users to access patient portals and other content associated with their Optum or UnitedHealthcare policies.  *See* Fisher Decl. ¶ 2.  This is not a "one-and-done interaction between the user and a traditional website."  *Keebaugh*, 100 F.4th at 1020.  "[T]he website's processes for setting up an account . . . convey[s] an expected 'continuing relationship' with customers[.]"  *Open Book Theatre Co.*, 749 F. Supp. 3d at 1083.  In fact, the multiple steps in the account creation process, including authentication and inputting of a username and password, underscore that the user is entering a continuing relationship governed by the Terms.  *Oberstein*, 60 F.4th at 517 (transaction requiring "full registration process, reflected the contemplation of 'some sort of continuing relationship' that would have put users on notice for a link to the terms of that continuing relationship").

Courts routinely enforce so-called "clickwrap" agreements that resemble the agreement Plaintiff assented to here.  *See, e.g.*, *Houtchens v. Google LLC*, 649 F. Supp. 3d 933, 939 (N.D. Cal. 2023) (enforcing "clickwrap" agreement and collecting cases on how "[c]ourts in the Ninth Circuit and other circuits acknowledge that mutual assent manifests when internet users accept 'clickwrap' agreements"); *Wilson v. Hatch Bank*, 2024 WL 1355492, at *4 (S.D. Cal. Mar. 29, 2024) (enforcing "clickwrap" agreement) *Siebert*, 422 F. Supp. 2d at 103 (same); *see also Sellers v. Justanswer LLC*, 73 Cal.App.5th 444,  470 (2021) (noting that clickwrap agreements "are generally considered enforceable").

Plaintiff unambiguously manifested his agreement to the Terms and arbitration provision therein, which required him to bring "any claims" related to the Online Services in an individual arbitration proceeding.  Fisher Decl. ¶¶ 6-9; Pepper Decl. ¶ 3, Ex. A at 6-8.  That ends the Court's analysis, and Plaintiff should be held to his agreement.

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW

- 14 -

## III.  ANY DISPUTE ABOUT ARBITRABILITY IS FOR THE ARBITRATOR

The existence of a valid arbitration agreement with Plaintiff resolves this Motion because the parties delegated any questions about arbitrability to the arbitrator.[5]

It is well established that parties can agree "to arbitrate 'gateway' questions of 'arbitrability' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson,* 561 U.S. 63, 68-70 (2010) (citation omitted).  When there is "clear and unmistakable evidence" that the parties agreed that an arbitrator would decide issues of arbitrability, courts must respect that agreement. *See First Options*, 514 U.S. at 944 (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).  A district court's role is therefore a narrow one.  Where, as here, the parties "delegate threshold arbitrability questions to the arbitrator," the court "may not override" that choice, "even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S. Ct. 524, 529-30 (2019).  Rather, the court's review is limited to the question of whether a valid agreement to arbitrate exists. *See Patrick*, 93 F.4th at 476-78.

Here, Plaintiffs "clearly and unmistakably" agreed to delegate gateway issues of arbitrability to the arbitrator:

> Arbitration . . . appl[ies] to all other claims relating to these Terms or the Online Services including (1) the interpretation, formation, performance, or breach of the Terms, (2) whether any part of the Terms is void or voidable, (3) whether a claim is subject to arbitration, and/or (4) whether arbitration has been waived due to litigation conduct.

Pepper Decl., Ex. A at 7.  This delegation is explicit and unambiguous. *See, e.g.*,

---

[5] The parties agreed that Minnesota law applies to "any claim or dispute" Plaintiff brings against Optum.  Pepper Decl., Ex. A at 8.  Accordingly, Minnesota law governs any interpretation of the Terms.

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW

MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 3:25-CV-0044-CAB-JLB

*Rent-A-Ctr.*, 561 U.S. at 68 (finding delegation clear and unmistakable where contract provided "[t]he Arbitrator . . . shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement"); *Momot*, 652 F.3d at 988 (finding language delegating to the arbitrators the authority to determine "the validity or application" of the arbitration clause constituted an agreement to arbitrate threshold issues).

The Terms' incorporation of the AAA Rules further underscores the parties' agreement to delegate gateway issues of arbitrability:

> **AAA Rules – Rule R-7(a):** The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.[6]

"[I]ncorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see also N. Am. Composites Co v. Reich*, 2016 WL 471353, at *1 (D. Minn. Feb. 5, 2016) (holding that when the parties explicitly incorporate the AAA rules "[t]he arbitrator, not the Court, must decide whether the arbitration agreement is valid"); *Jacobsen Gravel Co. v. IronPlanet, Inc.*, 2016 WL 10879837, at *3 (D. Minn. Nov. 10, 2016) (same); *Ill. Casualty Co. v. Kladek, Inc.*, 2023 WL 4869249, at *3-4 (D. Minn. Jul. 31, 2023) (same); *Momot*, 652 F.3d at 988 (same).

Accordingly, this Court should not decide whether Plaintiff's specific claims are subject to the Disputes Provision. Instead, the Court should direct the submission of Plaintiffs' claims to individual arbitration, where the arbitrator will decide any threshold issues regarding the Terms and scope of the arbitration agreement.

---

[6] Consumer Arbitration Rules of the American Arbitration Association, Rule R-7(a), available at https://adr.org/sites/default/files/Commercial%20Rules.pdf (last visited March 23, 2025).

## IV.    WERE THIS COURT TO ASSESS ARBITRABILITY, PLAINTIFF'S CLAIMS ARE COVERED BY THE ARBITRATION AGREEMENT AND THE ARBITRATION AGREEMENT IS NOT UNCONSCIONABLE

Even if the Court were to decide, contrary to the delegation provision of the arbitration agreement, that it (rather than the arbitrator) should assess gateway issues of arbitrability, Plaintiff's claims are still subject to binding arbitration because (i) they fall well within the scope of the arbitration agreement and (ii) the arbitration agreement is not unconscionable.

### A.    The Arbitration Agreement Covers Plaintiff's Claims

Where "parties have a contract that provides for arbitration of some issues," a presumption in favor of arbitrability attaches. *First Options*, 514 U.S. at 944. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983), and the presumption in favor of arbitration is even stronger when the arbitration provision is broadly worded, *Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752*, 989 F.2d 1077, 1080 (9th Cir. 1993).

The Terms leave no ambiguity that the claims asserted in this lawsuit are covered. With exceptions for small claims court, disputes about the existence or extent of an individual's health benefits or coverage, or claims that may not be arbitrated as a matter of law, "***all other claims*** relating to these Terms or the Online Services" are subject to arbitration. Pepper Decl., Ex. A at 6-7 (emphasis added). The Terms expressly define "Online Services" to include the "online and mobile websites, platforms, services and applications" of Optum, an affiliate of UnitedHealth Group. *Id.*, Ex. A at 1. This broad agreement readily includes Plaintiff's claims, which pertain to the Website and arise out of his alleged use of the Website. *See, e.g.*, *Chiron Corp.*, 207 F.3d at 1131 ("The parties' arbitration clause is broad and far reaching: 'Any dispute, controversy or claim arising out of or relating to the validity, construction, enforceability or performance of this

Agreement shall be settled by [arbitration].'"); *Babaeva v. J. Crew Group, LLC*, 2023 WL 7346079, at *2 (N.D. Cal. Nov. 6, 2023) (upholding arbitration agreement requiring arbitration of "any dispute or claim arising out or relating to these terms, your visit to the site, or any purchase, transaction, return or other interaction with" defendant); *Jordan*, 2025 WL 580894, at *5 (upholding arbitration agreement requiring arbitration of "any dispute involving you and [Defendant]).

### B.    The Arbitration Agreement Is Not Unconscionable

When disputing enforcement of the arbitration agreement, it is Plaintiff's burden to show that the provision is procedurally and substantively unconscionable. *See Carlson v. BMW Fin. Servs. NA, LLC*, 2025 WL 80245, at *3 (D. Minn. Jan. 13, 2025); *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC* ("*Pinnacle*"), 55 Cal.4th 223, 246 (2012). To be procedurally unconscionable, an arbitration clause must result in "oppression or surprise." *Pinnacle*, 55 Cal. 4th at 246. And to be substantively unconscionable, the clause "must be so one-sided as to shock the conscience." *Id.* (internal quotation marks and citation omitted). Plaintiff cannot show either.

### 1.    *The arbitration agreement is not procedurally unconscionable*

As a procedural matter, Plaintiff cannot plausibly show any "oppression or surprise." *Pinnacle*, 55 Cal.4th at 246; *Siebert*, 422 F. Supp. 2d at 1041.

In evaluating potential "oppression," courts look at "(1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney." *OTO, L.L.C. v. Kho*, 8 Cal.5th 111, 126-27 (2019). Here, there was no limit on the amount of time Plaintiff had to consider whether he wanted to agree to the Terms, since agreeing to the Terms and creating a UHID account is not a prerequisite to accessing health benefits and

coverage provided by Optum or UnitedHealthcare. *See* Fisher Decl. ¶ 2.

Plaintiff cannot point to any suggestion of surprise either. The arbitration agreement was not hidden within a prolix printed form or "buried in a lengthy agreement." *See Pinnacle*, 55 Cal.4th at 247 (citation omitted). Instead, the Terms conspicuously disclosed at the top of the first page, in uppercase, that the "DOCUMENT CONTAINS AN ARBITRATION AGREEMENT . . . WHICH AFFECT[S] YOUR LEGAL RIGHTS," and it urges the reader to "REVIEW [THE] DOCUMENT IN ITS ENTIRETY BEFORE ACCESSING OR USING THE ONLINE SERVICES." Pepper Decl., Ex. A at 1; *see also Kohler*, 2024 WL 4887538, at *7 (holding that defendant explicitly notified users about the arbitration agreement by making reference to it on the first page of the terms of use). Furthermore, under the heading "**Resolving Disputes,**" the Terms warn users, in bold typeface and uppercase, that the section "**MAY SIGNIFICANTLY AFFECT [THEIR] LEGAL RIGHTS, INCLUDING [THEIR] RIGHT TO FILE A LAWSUIT IN COURT**." *Id.* at 6; *see also Rissi v. T-Mobile USA, Inc.*, 2025 WL 108187, at *4 (S.D. Cal. Jan 15, 2025) (finding no surprise element because the "Arbitration Provision appear[ed] in bold and capitalized font under its own separate heading."). The arbitration terms are also written in straightforward manner and in a legible-sized font. *See Bielski v. Coinbase*, 87 F.4th 1003, 1014 (9th Cir. 2023) (holding there was no surprise because the arbitration provision was "written in plain language and in a legible-sized font").

Further, Plaintiff had a meaningful choice whether to accept the Terms or not. *Siebert*, 422 F. Supp. 2d at 1041. In particular, Plaintiff had 30 days to opt out of the arbitration agreement after agreeing to the Terms and thus had ample time to consider whether he wanted to arbitrate disputes with Optum. *See Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002) (holding that 30 days to opt-out from arbitration provision gives ample opportunity to investigate the provision); *Kohler*, 2024 WL 4887538, at *7 (arbitration agreement is not adhesive

because it enables consumers to opt-out through written notice within thirty days). As to length and complexity, the Disputes Provision is less than two pages long, contains clear headers—including a header for "How to Opt Out of Agreement to Arbitrate"—and is free from legal jargon. Pepper Decl., Ex. A at 6-7. There are zero indicia of procedural unconscionability.

### 2.   *The arbitration agreement is not substantively unconscionable*

Plaintiff also cannot plausibly maintain that the arbitration agreement is substantively unconscionable. Far from "being so one-sided to shock the conscience," the arbitration agreement is bilateral and contains several safeguards. *Pinnacle*, 55 Cal.4th at 246; *see also Siebert*, 422 F. Supp. 2d at 1041 ("Minnesota defines an unconscionable contract as one such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other."). These safeguards include (a) holding the arbitration in the state where Plaintiff lives; (b) limiting the scope of arbitration in certain areas, including disputes over health benefits; (c) requiring Optum to advance filing, administrative, and arbitration costs and expenses imposed by AAA if Plaintiff initiates an arbitration seeking $10,000 or less. Pepper Decl., Ex. A at 6-7; *Siebert,* 422 F. Supp. 2d at 1041-43 (holding that requiring plaintiff to pay arbitration costs is not in itself unconscionable); *Esquer v. Ed. Mgmt. Corp.*, 292 F. Supp. 3d 1005, 1016-17 (S.D. Cal. 2017) (similar).

Nor does the inclusion of a class action waiver render the arbitration agreement substantively unconscionable. Courts routinely hold that limitations on a plaintiff's ability to pursue classwide relief are not unconscionable. *See Concepcion*, 563 U.S. at 344 ("Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA."); *Kohler*, 2024 WL 4887538, at *11-12 (similar); *Mainville*, 629 F. Supp. 3d at 922 (holding that arbitration agreement must be enforced "even when the agreements require individualized arbitration proceedings

instead of class or collective proceedings."). Whether a consumer has sufficient incentive to pursue individual arbitration" is an "unrelated policy concern" that "cannot undermine the FAA." *Coneff v. AT&T Corp.*, 673 F.3d 1155, 1159 (9th Cir. 2012) (citing *Concepcion*, 161 S. Ct. at 1753); *see also Flores-Mendez v. Zoosk*, 2022 WL 2967237, at \*2 (N.D. Cal. Jul. 27, 2022) (similar).

For all these reasons, the arbitration agreement is not procedurally or substantively unconscionable.

## V.   THE LITIGATION SHOULD BE STAYED PENDING COMPLETION OF INDIVIDUAL ARBITRATION PROCEEDINGS

Finally, Optum respectfully requests that the litigation be stayed pending the completion of Plaintiff's individual arbitration.

Pursuant to its plain language, Section 3 of the FAA provides that a court "shall . . . *stay the trial of the action* until" the contemplated arbitration "has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added); *see also United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 F. App'x 412, 415 (9th Cir. 2002). Here, a valid arbitration agreement exists; thus, the court must order the parties to arbitrate, 9 U.S.C. § 4, and stay the arbitral claims until the arbitration has occurred in accordance with the terms of the agreement, *id.* § 3.

Courts in this District routinely stay litigation pending resolution of arbitration proceedings. *See e.g.*, *Ferrell v. CubeSmart*, 2025 WL 592795 at \*4 (S.D. Cal. Feb. 24, 2025) (staying action pending completion of arbitration); *Campbell v. CubeSmart,* 2025 WL 251429, at \*7 (S.D. Cal. Jan. 21, 2025) (same); *Rissi*, 2025 WL 108187, at \*9 (same); *S.T.G. by and through Garcia v. Epic Games, Inc.*, 2024 WL 4375782, at \*9 (S.D. Cal. Oct. 2, 2024) (same). This Court should do the same here.[7]

---

[7] Optum also requests that the Court stay this case while the motion to compel arbitration is pending. *See Anderson v. Optum Servs., Inc.*, 2024 WL 4589910, at \*3 (E.D. Cal. Oct. 28, 2024) (staying case "pending the Court's ruling on Defendant's motion to compel arbitration."); *cf Coinbase, Inc. v. Bielski*, 599 U.S.

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW

- 21 -

## CONCLUSION

For these reasons, this Court should order Plaintiff's claims to individual arbitration and stay this litigation pending completion of individual arbitration proceedings.

Dated:  March 31, 2025

**HOGAN LOVELLS US LLP**

By: /s/ *Vassi Iliadis*

Vassi Iliadis (SBN 296382)
James W. Ettinger (SBN 344292)
HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
vassi.iliadis@hoganlovells.com
jay.ettinger@hoganlovells.com

Adam Cooke (*pro hac vice*
forthcoming)
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, D.C. 20004
Telephone:  (202) 637-5600
adam.a.cooke@hoganlovells.com

*Attorneys for Defendant*
*Optum, Inc.*

---

736, 742-43 (2023) (staying a proceeding while the interlocutory appeal of an order denying a motion to compel arbitration is ongoing).

MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 3:25-CV-0044-CAB-JLB